**Electronically Filed
Intermediate Court of Appeals
30485
25-APR-2014
02:14 PM**

NO. 30485

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


CLARENCE O. FURUYA AND LONA LUM FURUYA,
Plaintiffs-Appellees/Cross-Appellants,
v.
ASSOCIATION OF APARTMENT OWNERS OF PACIFIC MONARCH, INC.;
JAMES DOZIER; GRETA WITHERS; ELWIN STEMIG; FOIL CRAVER;
KAZUO SAWADA, Defendants-Appellants/Cross-Appellees,
and
JOHN DOES 1-100; JANE DOES 1-10; DOE PARTNERSHIPS 1-100;
DOE CORPORATIONS 1-10; DOE ENTITIES 1-10; and DOE GOVERNMENTAL
UNITS 1-10, Defendants,

AND

ASSOCIATION OF APARTMENT OWNERS OF PACIFIC MONARCH, INC.,
Counterclaim Plaintiff-Appellant/Cross-Appellee,
v.
CLARENCE O. FURUYA and LONA LUM FURUYA,
Counterclaim Defendants-Appellees/Cross-Appellants,
and
JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10;
DOE CORPORATIONS 1-10; DOE ENTITIES 1-10; and DOE
GOVERNMENTAL UNITS 1-10, Counterclaim Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 06-1-1057)


MEMORANDUM OPINION
(By: Reifurth and Ginoza, JJ., and
Nakamura, C.J., concurring separately)

This case involves a complaint filed in the Circuit
Court of the First Circuit[1] ("Circuit Court") by leasehold

---

[1] The Honorable Rom A. Trader presided.

apartment co-owners at the Pacific Monarch condominium project in Honolulu, Hawaiʻi against Defendant/Counterclaim Plaintiff-Appellant/Cross-Appellee Association of Apartment Owners of Pacific Monarch, Inc. ("AOAO"), contending that the AOAO violated the November 14, 1995 Restated Declaration of the Association of Apartment Owners of Pacific Monarch ("Restated Declaration") and the November 14, 1995 Restated Bylaws of the Association of Apartment Owners of Pacific Monarch ("Restated Bylaws") by refusing to sell them the leased fee interest in their apartment. Specifically, Plaintiffs/Counterclaim Defendants-Appellees/Cross-Appellants Clarence O. Furuya and Lona Lum Furuya (collectively, the "Furuyas") contend that the AOAO was unwilling to include the leased fee interest in certain limited common elements appurtenant to the apartment in the sale.

In its appeal, the AOAO challenges the March 2, 2010 Findings of Fact, Conclusions of Law and Order ("March 2010 FOF/COL") and the April 6, 2010 Judgment ("Judgment"). In their cross-appeal, the Furuyas contest the March 2010 FOF/COL, the Judgment, three other orders, and another judgment.[2]

On appeal, the AOAO raises six points of error[3] while,

---

[2]     In addition to the Judgment and March 2010 FOF/COL, the Furuyas challenge the July 21, 2009 Order Granting Partial Dismissal of Plaintiffs Clarence O. Furuya and Lona Lum Furuya's First Amended Complaint Filed on November 30, 2007 Pursuant to HRCP Rule 41(b) in Favor of Defendant Association of Apartment Owners of Pacific Monarch, Inc. ("Partial Dismissal Order"); the June 15, 2010 Order Denying Plaintiffs' Motion for Award of Attorneys' Fees and Costs Filed on April 15, 2010; the June 15, 2010 Order Granting Motion by Defendant Association of Apartment Owners of Pacific Monarch, Inc., and Defendants James Dozier, Greta Withers, Elwin Stemig, Foil Craver, and Kazuo Sawada, for an Award of Attorney's Fees and Costs Against Plaintiffs Clarence O. Furuya and Lona Lum Furuya Filed on March 22, 2010; and the July 13, 2010 Judgment Re Award of Attorney's Fees and Costs.

[3]     The AOAO contends that in the March 2010 FOF/COL, the Circuit Court erred (1) by speculating that the developer intended to give up its right to lease rent for 106 parking stalls appurtenant to Unit 3206 ("Parking Stalls") after 2014; (2) in finding that the Furuyas' obligation to pay maintenance fees and lease rent after 2014 is "purely a function of the percentage of common interest (0.5107%) assigned to [Unit 3206]"; (3) in concluding that Subsection 1A of a condominium conveyance document recorded on June 1, 1979 ("Conveyance Document") was not subject to the rent renegotiation provision in Subsection 1(e) of the Conveyance Document; (4) in finding and concluding that the rent renegotiation provision in Subsection 1(e) of the Conveyance Document did not apply to the Parking Stalls because the Parking Stalls were not assigned any percentage of common interest in the common elements; (5) in concluding that the AOAO had ratified the terms of the Conveyance Document, as interpreted by the Court, because the AOAO unreasonably delayed in bringing a claim for reformation of the Conveyance
(continued...)

on their cross-appeal, the Furuyas raise twenty additional points.[4]

---

[3] (...continued)
Document; and (6) in concluding that Hawaii Revised Statutes ("HRS") § 514C-22 does not give the AOAO a right to lease rent payments from the Furuyas after 2014.

[4]    The Furuyas contend that the Circuit Court erred (1) in failing to make findings of fact and conclusions of law in support of its decision relating to the Partial Dismissal Order; (2) in dismissing Counts I and II of the November 30, 2007 First Amended Complaint ("Complaint") for breach of the Pacific Monarch Leased Fee Interest Sales Contract Deposit Receipt Offer and Acceptance ("DROA") for Unit 3206 and specific enforcement, and in finding and concluding in the December 21, 2012 Findings of Fact and Conclusions of Law in Support of the Order Granting Partial Dismissal of Plaintiffs Clarence O. Furuya and Lona Lum Furuya's First Amended Complaint Filed on November 30, 2007 Pursuant to HRCP Rule 41(B) in Favor of Defendant Association of Apartment Owners of Pacific Monarch, Inc., Filed on July 21, 2009 ("December 2012 FOF/COL") that the DROA for Unit 3206 is not an enforceable contract; (3) in dismissing Counts IV and IX of the Complaint, relating to injunctive relief and alleged *ultra vires* actions, and in the December 2012 FOF/COL, in concluding that the Board of Directors ("Board") acted within its authority; (4) in dismissing Counts VI and VII of the Complaint, relating to promissory and equitable estoppel respectively, finding and concluding that the Furuyas' reliance on the AOAO's promises, assurances, or actions was not reasonable; and in the December 2012 FOF/COL, in finding that the AOAO was not obligated to close the sale on Unit 3206; (5) in partially dismissing Count V, which is the Furuyas' claim for declaratory relief, in finding, concluding, and declaring that the AOAO was entitled to retain possession and ownership of the leased fee interests in Unit 3206 and the Parking Stalls; (6) in finding in the March 2010 FOF/COL and the December 2012 FOF/COL that the AOAO offered the Furuyas the opportunity to purchase the leased fee interests associated with Unit 3206 and the Parking Stalls; (7) in finding in the March 2010 FOF/COL that "[a]t first, the Furuyas attempted to purchase the fee interest for 3206 without the parking stalls, however they were unsuccessful in doing so"; (8) in finding in the March 2010 FOF/COL that "the Furuyas attempted to sell their leasehold interest in the 106 stalls to the AOAO, however these attempts also failed"; (9) in declaring in the March 2010 FOF/COL that the AOAO was the rightful owner of the leased fee interests that were not purchased by the Furuyas; (10) in declaring in the Judgment that the AOAO is the legal and beneficial owner of the leased fee interests to Unit 3206 and the Parking Stalls and that it "is not legally or morally obligated to sell the leased fee interests to the Apartment Unit 3206 and the 106 Parking Stalls to Plaintiffs"; (11) in concluding, in dismissing Count XI of the Complaint, that the Furuyas had waived their claim for conversion of the use of the Parking Stalls or that the claim was barred by the statute of limitations; (12) in identifying in the March 2010 FOF/COL two parking stalls used in connection with laundry services, and in finding and concluding, in the December 2012 FOF/COL, that the two parking stalls "were assigned and that the stalls created the laundry"; (13) in finding in the March 2010 FOF/COL and in the December 2012 FOF/COL that the Furuyas acquired the two laundry-related stalls "subject to their known, obvious, and accepted use by the AOAO without compensation"; (14) in finding in the March 2010 FOF/COL and in the December 2012 FOF/COL that the Furuyas assented to the use of the two parking stalls through their inaction; (15) in concluding in the March 2010 FOF/COL and the December 2012 FOF/COL that the Furuyas acquiesced or consented to the use of the two laundry-related parking stalls; (16) by incorrectly stating in the March 2010 FOF/COL and the December 2012 FOF/COL the elements of the affirmative defense of estoppel by acquiescence; (17) in concluding in the March 2010 FOF/COL and the December 2012 FOF/COL that the Furuyas are estopped from asserting a claim and seeking damages for the past and future use of the two laundry- related parking stalls; (18) in entering judgment in favor of the
(continued...)

3

I.    Background

          This appeal concerns Unit 3206, an apartment unit at
the Pacific Monarch, a condominium project located on Kūhiō
Avenue in Honolulu, which was established on February 5, 1979
pursuant to the Pacific Monarch Declaration of Horizontal
Property Regime Under Chapter 514A, Hawaii Revised Statutes
("Declaration").   Appurtenant to Unit 3206 are 106 parking stalls
("Parking Stalls"), which, the Declaration states, "are for the
exclusive use of the owner of Unit 3206."

          In 1979, Unit 3206 and the Parking Stalls were conveyed
by Hasegawa Komuten (USA), Inc., the developer of the Pacific
Monarch, to Rex Duane Johnson and Paula Kathleen Johnson
(together, the "Johnsons") via the Pacific Monarch Condominium
Conveyance Document recorded on June 1, 1979 ("Conveyance
Document").   The Parking Stalls "comprise[d] all of the numbered
limited common element parking stalls" in the Pacific Monarch.
Following the foreclosure of the Johnsons' interest, "Apartment
3206 and the Parking Stalls were conveyed to [the Furuyas] by a
Commissioner's Assignment of Condominium Conveyance Document
recorded . . . on July 28, 1985."[5/]

          On September 22, 1995, an amendment to the Declaration
was recorded, authorizing the AOAO's Board of Directors ("Board")
to purchase the fee interest in the Pacific Monarch's land and to
re-sell that interest to the AOAO members or other parties:

               Subsection (s) shall be added and shall read in its
          entirety as follows:

               Implementation of the Acquisition of the Leased Fee
          Interest in the Land from Lessor.

               The Board of Directors shall be authorized and have
          the power to do all things it deems necessary to enable the
          Lessor and/or its successors or assigns of the leased fee

---

          [4/] (...continued)
AOAO; (19) in concluding that Count IV of the Complaint, relating to
injunctive relief, was moot; and (20) in granting the AOAO, and denying the
Furuyas, attorneys' fees and costs.   In their supplemental opening brief, the
Furuyas also state a generalized grievance that the Circuit Court erred in
"concluding that there was substantial evidence to support the conclusions."
This point of error does not merit consideration outside of the points of
error actually argued.

          [5/]    In 1989, the Furuyas also acquired a leasehold interest in Unit
3207.

4

> interest in the land (Lessor) to sell that interest to the Association and/or its members. The Board on behalf of the Association shall be authorized to purchase all or any portion of the Leased Fee interest from the Lessor and is expressly authorized to transact any and all other matters relating to the acquisition specifically but not limited to the following:
>
> . . . .
>
> 5. To sell the leased fee interest in the land involving the appurtenant apartment or commercial units, first to the Lessee of the appurtenant apartment or commercial unit and if the leased fee interest in the land is unsold, then to any interested Lessee in the Association or other interested third party by any equitable method of sale as determined in the sole discretion of the Board.

The deed conveying the leased fee interest in the land to the AOAO was recorded on November 26, 1996, with the stated purpose of making the leased fee interest available to the individual apartment owners.

### A. The Complaint and Counterclaim

#### 1. The Complaint

On November 30, 2007, the Furuyas filed their First Amended Complaint ("Complaint").[5/] The Complaint alleged that the AOAO offered to sell the leased fee interest appurtenant to Unit 3206 to the Furuyas and Clarence Furuya allegedly accepted the offer by executing the Pacific Monarch Leased Fee Interest Sales Contract Deposit Receipt Offer and Acceptance ("DROA"). The Furuyas thereafter deposited earnest money, identified as

---

[5/] The Furuyas asserted thirteen counts against the AOAO, including: Count I—breach of contract (relating to the AOAO's refusal to sell the leased fee interest in Unit 3206 and the Parking Stalls to the Furuyas pursuant to the DROA); Count II—specific performance; Count IV—injunctive relief (seeking an injunction barring the AOAO from selling the Furuyas' interest to a third party); Count V—declaratory judgment (seeking, among other things, a declaration that the Furuyas "have no obligation to pay lease rent on the parking stalls after 2014"); Count VI—promissory estoppel (claiming that the Furuyas detrimentally relied on the AOAO's promises to convey the leased fee interest to the Furuyas); Count VII—equitable estoppel (claiming that the Furuyas detrimentally relied upon the AOAO's assurances that the Furuyas would be entitled to purchase the leased fee interests and the AOAO's conduct in assisting other apartment owners in purchasing their respective fee interests); Count IX—*ultra vires* actions (claiming that the AOAO does not have the right under the declaration and bylaws "to hold and maintain parking stalls in its own name in derogation of the rights of the individual unit owners"); Count X—unjust enrichment (claiming that the AOAO would be unjustly enriched if it were allowed to retain the leased fee interest to Unit 3206 and the Parking Stalls while also keeping higher maintenance fees or the revenue loss from the use and conversion of several of the Parking Stalls); and Count XI—conversion (claiming that the AOAO converted some of the Parking Stalls).

relating to the purchase, into an escrow account.

The Furuyas alleged that the AOAO expressed an interest in purchasing the Furuyas' leasehold interest in the Parking Stalls, while the Furuyas still wished to complete purchase of the leased fee interest to Unit 3206 and the Parking Stalls. Negotiations over the Parking Stalls continued for several years, with each party allegedly desiring to obtain the other's respective interest. On or about December 1, 2003, the Furuyas claim to have "made a formal request to go forward with the purchase of Plaintiffs['] Fee Interest, which request was refused by Defendant AOAO, as were subsequent requests by Plaintiffs to go forward with the sale of Plaintiffs['] Fee Interest to Plaintiffs."

The Complaint further alleged that since the time that the Furuyas acquired Unit 3206 in 1985, the AOAO had converted several of the Parking Stalls, including two stalls[2] for permanent use as a laundry facility, a reserved parking stall, and five stalls for handicapped parking.

On the basis of these allegations, the Furuyas asserted that the AOAO committed breach of contract by refusing to sell the leased fee interest in Unit 3206 and the Parking Stalls to the Furuyas pursuant to the DROA, and sought various forms of relief, including specific performance and injunctive relief. Additionally, the Furuyas sought a declaratory judgment that declared, *inter alia*, that the Furuyas "have no obligation to pay lease rent on the parking stalls after 2014". The Complaint also contained promissory estoppel, equitable estoppel, *ultra vires* actions, unjust enrichment, and conversion claims.

2.    The Counterclaim

In its first amended counterclaim ("Counterclaim"), filed on March 11, 2008, the AOAO alleged breach of contract, contending that the Furuyas "refused to timely close the purchase of the Apartment or the Parking Stalls." The Counterclaim

---

[2]    While the Complaint references three such stalls, the Circuit Court's findings clarify that there were just two such stalls.

continued:[8]/

> 8.   On or about April 23, 1996, [the Furuyas] signed a form indicating that if the Association purchased the leased fee interest from the lessor, [the Furuyas] would purchase the leased fee interests appurtenant to their property at [the Pacific Monarch] at the prices assigned to those interests:   $28,756.85 for each of the two apartments and $459,131.19 for the leased fee interest in the Parking Stalls.

> 9.   In reliance on the commitment by [the Furuyas], the Association entered into a contract to purchase the leased fee interest in the [Pacific Monarch] in bulk from the lessor.

> 10.   On or about October 21, 1996, [the Furuyas] executed [the DROA] for the purchase of the leased fee interest covering Apartment 3206 and the appurtenant 106 Parking Stalls from the Association.

> 11.   By Limited Warranty Deed dated November 26, 1996, recorded in said Bureau, the Association acquired the leased fee interest in the [Pacific Monarch] including the leased fee interest appurtenant to Apartment 3206 and the Parking Stalls.

The AOAO argued, within the equitable estoppel/reformation count in its Counterclaim, that the Furuyas would be unjustly enriched if they failed to pay lease rent for use of the AOAO's property, that the Furuyas should be estopped from asserting that they do not have to pay lease rent after 2014 for the Parking Stalls, and that the Circuit Court "should reform the Lease to provide that [the Furuyas'] lease rent continues after the year 2014 for . . . the Parking Stalls."

> B.   Partial dismissal of the Furuyas' claims

The case was tried without a jury.   On June 24, 2009, after the Furuyas rested, the AOAO moved for a directed verdict

---

[8]/   The AOAO ultimately asserted eight claims in its Counterclaim, including: Count IV—breach of contract and promissory estoppel (claiming that the Furuyas failed to timely close on the purchase of the leased fee interests); Count V—attorneys' fees (seeking fees and costs for "enforcing any provision of the Project Documents and/or chapter 514A"); Count VI—anticipatory breach of contract (seeking a ruling that the Furuyas may not breach their conveyance document and that the Furuyas are required to pay lease rent to the AOAO for the use of the leased fee interest appurtenant to the Parking Stalls after 2014); Count VII—equitable estoppel/reformation (claiming that the Furuyas would be unjustly enriched if they failed to pay lease rent for use of the AOAO's property, that the Furuyas should be estopped from asserting that they do not have to pay lease rent after 2014, and that the Circuit Court "should reform the Lease to provide that [the Furuyas'] lease rent continues after the year 2014 for . . . the Parking Stalls"); and Count VIII—mistake/reformation (seeking reformation of the lease to provide that lease rent for the Parking Stalls continues after the year 2014).

pursuant to, among other things, Hawaiʻi Rules of Civil Procedure
("HRCP") Rule 41(b). After a recess, the Circuit Court announced
that it would treat the motion as a motion to dismiss under HRCP
Rule 41(b), and would therefore consider the evidence in the
light most favorable to the nonmoving party.

The Circuit Court held that the DROA was not
enforceable:

> And here, you know, as it relates to Mr. Furuya . . . the
> Court had an opportunity to listen to his testimony at
> length, which is a significant part, I guess the bulk of the
> case. . . . [A]nd in looking at the documents, and
> particularly the DROA and some of the other governing
> documents, it's the Court's view that as a matter of law,
> that the contract that plaintiff attempts to rely on, the
> DROA for enforcement and damages, basically is not
> enforceable. . . . So I'm going to respectfully grant the
> motion as it relates to Counts 1 and 2.

The Circuit Court also made brief oral rulings on the remaining
counts, dismissing Counts IV, VI, VII, IX, and XI and partially
dismissing Counts V and X.

On July 21, 2009, the Circuit Court filed the Order
Granting Partial Dismissal of Plaintiffs Clarence O. Furuya and
Lona Lum Furuya's First Amended Complaint Filed on November 30,
2007 Pursuant to HRCP Rule 41(b) in Favor of Defendant
Association of Apartment Owners of Pacific Monarch, Inc.
("Partial Dismissal Order"). The order dismissed the counts as
stated in the Circuit Court's oral ruling pursuant to HRCP Rule
41(b), but left unresolved whether the Furuyas had an obligation
to pay lease rent for the Parking Stalls after the year 2014
under Count V, and whether the Furuyas were entitled to damages
for the alleged unauthorized use of the two parking stalls
assigned to the laundry facilities under Count X.

C.    Findings of Fact and Conclusions of Law and Judgment

On March 2, 2010, after a full trial, the Circuit Court
filed the March 2010 FOF/COL which noted that many of the claims
asserted by both sides had been dismissed and that, because of
its ruling on the AOAO's oral HRCP Rule 41(b) motion, Count IV of
the Counterclaim had been rendered moot. The Circuit Court
explicitly stated that its "decision relates only to the[]
remaining claims/counterclaims" - Count V (Declaratory Judgment -

AOAO) and Count X (Unjust Enrichment - AOAO) of the Complaint; and Count V (Attorneys Fees/Costs), Count VI (Anticipatory Breach of Contract), Count VII (Equitable Estoppel/Reformation) and Count VIII (Mistake/Reformation) of the Counterclaim. The Circuit Court granted declaratory relief to the Furuyas, stating that "under the [Conveyance Document], no 'additional rent' for the parking stalls is due after April 26, 2014", and concluded that the Furuyas were not liable to the AOAO for Counts V, VI, VII, and VIII of the Counterclaim, dismissing those claims. The Judgment followed, and was entered on April 6, 2010.

D.    Attorneys' fees and costs

On March 22, 2010, the AOAO and its directors who had previously been dismissed from the case moved for attorneys' fees and costs pursuant to Hawaii Revised Statutes ("HRS") §§ 514A-94(a) and (b) and 607-14, the Restated Declaration, and the Restated Bylaws. On April 15, 2010, the Furuyas also moved for an award of attorneys' fees and costs pursuant to HRS §§ 514A-94, 514B-157, 607-9, and 607-14.

On June 15, 2010, the Circuit Court denied the Furuyas' motion and granted the AOAO's motion, awarding the AOAO and its Directors, as the prevailing parties, reasonable attorneys' fees in the amount of $241,361.00, general excise taxes of $11,281.64, and reasonable costs in the amount of $19,349.55. On July 13, 2010, the Circuit Court entered the Judgment Re Award of Attorney's Fees and Costs.

E.    Findings of fact and conclusions of law on temporary remand

On October 25, 2012, this court determined that the Partial Dismissal Order was not properly supported with findings of fact and conclusions of law and temporarily remanded the case to the Circuit Court for the issuance of such findings and conclusions, noting that "[a]lthough the Circuit Court . . . dismissed claims pursuant to HRCP Rule 41(b), the ruling should be considered made pursuant to HRCP 52(c)." In response, on December 21, 2012, the Circuit Court filed the Findings of Fact and Conclusions of Law in Support of the Order Granting Partial

Dismissal of Plaintiffs Clarence O. Furuya and Lona Lum Furuya's First Amended Complaint Filed on November 30, 2007 Pursuant to HRCP Rule 41(B) in Favor of Defendant Association of Apartment Owners of Pacific Monarch, Inc., Filed on July 21, 2009 ("December 2012 FOF/COL").

II.   Standards of Review

Order Granting Partial Dismissal - HRCP Rule 41(b)/52(c)

"Where we have patterned a rule of procedure after an equivalent rule within the FRCP [Federal Rules of Civil Procedure], interpretations of the rule by the federal courts are deemed to be highly persuasive in the reasoning of this court." *Kawamata Farms, Inc. v. United Agric. Prods.*, 86 Hawai'i 214, 251-52, 948 P.2d 1055, 1092-93 (1997) (quoting *Harada v. Burns*, 50 Haw. 528, 532, 445 P.2d 376, 380 (1968)) (internal quotation marks omitted).

> In reviewing the district court's judgment entered under Rule 52(c), we review its findings of fact for clear error and its conclusions of law *de novo*. *Lee v. W. Coast Life Ins. Co.*, 688 F.3d 1004, 1009 (9th Cir.2012). If the district court applied the correct legal rule, we may set aside its findings of fact as clearly erroneous only if they are "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir.2009) (en banc). In applying this standard in the context of a bench trial, we "must constantly have in mind that [our] function is not to decide factual issues *de novo*." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (internal quotation marks omitted). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, [we] may not reverse it even though convinced that had [we] been sitting as the trier of fact, [we] would have weighed the evidence differently." *Id*. at 573-74, 105 S.Ct. 1504.

*United Steel Workers Local 12-369 v. United Steel Workers Int'l*, 728 F.3d 1107, 1114 (9th Cir. 2013).

Findings of fact

Findings "are reviewed under the clearly erroneous standard." *Aickin v. Ocean View Invs. Co.*, 84 Hawai'i 447, 453, 935 P.2d 992, 998 (1997) (citing *Dan v. State*, 76 Hawai'i 423, 428, 879 P.2d 528, 533 (1994)).

Conclusions of law

Conclusions of law are reviewed under the right/wrong standard. *Kewalo Ocean Activities v. Ching*, 124 Hawai'i 313,

10

317, 243 P.3d 273, 277 (App. 2010) (quoting *Sierra Club v. Dep't of Transp.*, 120 Hawaiʻi 181, 196, 202 P.3d 1226, 1241 (2009)). "However, a conclusion of law that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case." *Id.* (quoting *Sierra Club*, 120 Hawaiʻi at 196, 202 P.3d at 1241). A mixed question of fact and law consists of the application of a legal standard to the factual conduct of the parties. *Del Monte Fresh Produce (Haw.), Inc. v. Int'l Longshore & Warehouse Union, Local 142, AFL-CIO*, 112 Hawaiʻi 489, 500, 146 P.3d 1066, 1077 (2006).

Interpretation of operative documents

The trial court's interpretation of the operative documents of an association of apartment owners is reviewed de novo. *Accord Swanson v. Parkway Estates Townhouse Ass'n*, 567 N.W.2d 767, 768 (Minn. Ct. App. 1997).

Contractual interpretation

"As a general rule, the construction and legal effect to be given a contract is a question of law freely reviewable by an appellate court." *Brown v. KFC Nat'l Mgmt. Co.*, 82 Hawaiʻi 226, 239, 921 P.2d 146, 159 (1996) (quoting *Cho Mark Oriental Food, Ltd. v. K & K Int'l*, 73 Haw. 509, 519, 836 P.2d 1057, 1063 (1992)) (internal quotation marks omitted).

Attorneys' fees and costs

"The trial court's rulings concerning the award of attorneys' fees and costs are generally reviewed under the abuse of discretion standard." *AOAO of Wailea Elua v. Wailea Resort Co.*, 100 Hawaiʻi 97, 120, 58 P.3d 608, 631 (2002).

Statutory interpretation

The trial court's interpretation of a statute is reviewed de novo. *Bhakta v. Cnty. of Maui*, 109 Hawaiʻi 198, 208, 124 P.3d 943, 953 (2005).

11

III. Discussion

    A.    The AOAO's appeal

        1.    Regarding lease rent for the Parking Stalls after 2014, the Circuit Court's interpretation of the Conveyance Document was not erroneous (Points of Error 1-4)

The lease rent for the Parking Stalls after 2014 was one of the issues resolved after a full bench trial. The AOAO contends that the Circuit Court erred when it interpreted the Conveyance Document regarding the lease rent for the Parking Stalls in the March 2010 FOF/COL. Specifically, the AOAO challenges the Circuit Court's "speculating" that the developer intended to give up its right to lease rent for the Parking Stalls after 2014; the court's findings that the Furuyas' obligation to pay maintenance fees and lease rent after 2014 is "purely a function of the percentage of common interest (0.5107%) assigned to [Unit 3206]"; the court's finding and concluding that Section IV.1A ("Subsection 1A") of the Conveyance Document was not subject to the rent renegotiation provision in Section IV.1.e ("Subsection 1(e)") of the Conveyance Document; and the court's finding and concluding that the rent renegotiation provision in Subsection 1(e) of the Conveyance Document did not apply to the Parking Stalls because the Parking Stalls were not assigned any percentage of common interest in the common elements.

    The Conveyance Document conveys Unit 3206 and, among other things, "[e]xclusive easements to use parking stalls 1 through 106" and "[a]n undivided interest, equal to the percentage shown above, as tenant in common with Developer, its successors and assigns, in and to the Common Elements of the [Pacific Monarch] (exclusive of the Land)[.]" The Conveyance Document provides that Unit 3206 has a 0.5107% undivided interest and that its percentage of residential expenses is 0.5233%. The Conveyance Document, effective April 27, 1979, also provides that the Apartment Owner leases from Developer "an undivided interest, equal to Apartment Owner's common interest in the Common Elements appurtenant to the Apartment as set forth in the Declaration

. . . as tenants in common with other lessees in and to the Land situate at Waikiki, City and County of Honolulu," with such rights to the undivided interest in the Land until April 27, 2054.

Section IV, including Subsection 1(e), of the Conveyance Document states, in pertinent part:

> IV. <u>Apartment Owner's Covenants</u>. The Apartment Owner, in consideration of the premises, hereby covenants and agrees with Developer as follows:
>
> 1. <u>Rental</u>. The Apartment Owner covenants and agrees to pay or cause to be paid rental in lawful money of the United States of America to Developer, or as Developer may hereafter designate in writing, without notice or demand as follows:
>
> (a) $444.00 per annum for the period commencing on the Effective Date hereof and ending on Apr 26, 1989;
>
> (b) $600.00 per annum for the next ten (10) years of said term ending on Apr 26, 1999;
>
> (c) $804.00 per annum for the next ten (10) years of said term ending Apr 26, 2009;
>
> (d) $948.00 per annum for the next five (5) years of said term ending [illegible], 2014;
>
> Such annual rental shall be payable monthly each month during the term hereof in advance on the first day of the month. Rental for any partial month at the commencement or termination of any rental period shall be prorated.
> (e) For each of the remaining four (4) successive ten-year periods of the term hereof, such annual rental payable as aforesaid shall be the Apartment Owner's proportionate share of the total annual rental ("total annual rent" established for the Land. Wherever it shall herein provide for the Apartment Owner's "proportionate share", the Apartment Owner's share shall be equal to the total multiplied by the Apartment Owner's then percentage undivided interest in the Land. The total annual rental for each such period for the Land shall be equal to its fair market rental value, but not less than seven percent (7%), or the customary lessor's percentage return (as hereinafter defined) on land, whichever percentage is higher, of the fair market value of the Land (exclusive of any buildings or other improvements) at the beginning of each such period valued as though the Land had not been leased, but encumbered by its existing use, as shall be agreed upon in writing between a majority of the Board of Directors . . . of the Association of Apartment Owners . . . and Developer, and in any event not less than the total annual rent for any preceding rental period. . . .
> In the event Developer and the Board of Directors are unable to agree upon the fair market

rental value of the Land ninety (90) days prior to the commencement of any of said periods, then the same shall be determined by three impartial real estate appraisers . . . .

Rent for the Parking Spaces is treated differently under Subsection 1A of the Conveyance Document:

1A.   Additional Rent.  Apartment Owner acknowledges that he has additional use of the Land by reason of his ownership of the parking stalls appurtenant to his Apartment and agrees to pay additional rent for the undivided interest in the Land demised hereby equal to the number of parking stalls conveyed by I(c) above multiplied by:

(a)   $2.50 per month for the period commencing on the Effective Date hereof and ending on April 26, 1989;

(b)   $3.50 per month for the next ten (10) years of said term ending on April 26, 1999;

(c)   $4.50 per month for the next ten (10) years of said term ending April 26, 2009;

(d)   $5.50 per month for the next five (5) years of said term ending April 26, 2014;

payable together with the rent provided in Section 1 above. . . .

Subsection 1A does not separately provide for the determination of new additional rent obligations after April 26, 2014.

The rent redetermination provision in Subsection 1(e) provides a very specific method for determining an owner's proportionate share of the total annual rental established for the Land—that is, for determining "such *annual rental payable as aforesaid.*"  (Emphasis added).  An Apartment Owner's "proportionate share" is equal to the total annual rent *multiplied by the Apartment Owner's then percentage undivided interest in the Land.*  (Emphasis added).  Thus, the amount of a new rental obligation, pursuant to the mechanisms in Subsection 1(e), is a function of the owner's percentage undivided interest in the Land—for Unit 3206, that number is 0.5107%—multiplied by the fair market rental value of the land.  On the other hand, the additional rent payable by the Apartment Owner for the Parking Stalls is not a function of his or her percentage of undivided interest in the land, and additional rent is treated differently from annual rent, as additional rent is "payable together with the rent provided in Section 1 above."  In light of this method

of determination, the Circuit Court did not clearly err when it found that the Furuyas' obligation to pay maintenance fees and lease rent after 2014 is "purely a function of the percentage of common interest" assigned to Unit 3206.

"As a general rule, it is the function of courts to construe and enforce contracts made by the parties, and not to make or alter them[.]" *Scotella v. Osgood*, 4 Haw. App. 20, 24, 659 P.2d 73, 76 (1983). "[T]erms of a contract should be interpreted according to their plain, ordinary and accepted use in common speech, unless the contract indicates a different meaning." *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 108-09, 839 P.2d 10, 24 (1992) (quoting *Azer v. Myers*, 8 Haw. App. 86, 123, 793 P.2d 1189, 1212 (1990)). "We seek to interpret the contract in a manner that makes the contract internally consistent." *Accord Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 872 (9th Cir. 1979).

Here, examining the overall structure of the Conveyance Document, the rent determination provision in Subsection 1(e) applies only to annual rental payments and not to additional rental payments for the Parking Stalls. Subsection 1(e) does not provide any mechanism for determining the value of an individual parking space, and we do not infer from anything in the document that the rent for the Parking Stalls was to be reevaluated according to their fair market value or by any other metric.[9/] Furthermore, the Conveyance Document's silence on the subject of rental prices for the Parking Stalls after April 26, 2014, severely undercuts the AOAO's position and supports the Circuit Court's conclusion that "the absence of provision [sic] providing for 'additional rent' for the parking stalls after April 26, 2014

---

[9/]    Our reasoning is consistent with and supported by the Circuit Court's unchallenged FOF 20 in the March 2010 FOF/COL, which reads: "Per the Declaration the 106 parking stalls appurtenant to Unit 3206 were not assigned a percentage common interest in the common elements." FOFs that are not challenged on appeal are binding on the appellate court. *See, e.g., AlohaCare v. Ito*, 126 Hawaiʻi 326, 353, 271 P.3d 621, 648 (2012); *In re Lock Revocable Living Trust*, 109 Hawaiʻi 146, 154, 123 P.3d 1241, 1249 (2005); *Okada Trucking Co. v. Bd. of Water Supply*, 97 Hawaiʻi 450, 458, 40 P.3d 73, 81 (2002).

was necessarily intended by the original parties."[10] Thus, the Circuit Court did not err in finding and concluding that Subsection 1A was not subject to the rent renegotiation provision in Subsection 1(e).

The AOAO argues that the Circuit Court erred when it entered FOF 56 of the March 2010 FOF/COL because it equated an Apartment Owner's undivided interest in the land with his or her undivided interest in the common elements. However, as the Circuit Court correctly concluded, Section II of the Conveyance Document states that the Apartment Owner leases from the Developer "an undivided interest, equal to Apartment Owner's common interest in the Common Elements appurtenant to the Apartment as set forth in the Declaration . . . in and to the Land[.]" Thus, the percentages assigned for the common elements and the Land are equivalent, the Circuit Court did not clearly err in making its related findings of fact and conclusions of law, and the AOAO's argument is without merit.

Finally, the AOAO argues that the Circuit Court adopted an absurd interpretation of the Conveyance Document. However, the absurd-construction doctrine only applies if a contract is "susceptible to two constructions." *Amfac, Inc.*, 74 Haw. at 110, 839 P.2d at 25. Because we hold that the Conveyance Document is not susceptible to two constructions, we decline to hold that the Circuit Court adopted an absurd interpretation of the Conveyance Document.[11]

---

[10] The AOAO argues that the Circuit Court erred in "speculating" that the developer intended to give up the right to collect lease rent for the Parking Stalls after April 26, 2014. Even if the Circuit Court improperly speculated as to what the developer intended, the AOAO fails to present any evidence of a contrary intention, and we must consider the plain, unambiguous language of the Conveyance Document. *See Williams v. Aona*, 121 Hawaiʻi 1, 15, 210 P.3d 501, 515 (2009) ("The court should look no further than the four corners of the document to determine whether an ambiguity exists.").

[11] We observe that other than its claim of equitable estoppel/reformation (Count VII in its Counterclaim), the AOAO did not assert other equitable claims, such as unjust enrichment or quantum meruit. Moreover, and importantly, because the AOAO did not raise these arguments on appeal, we deem them waived. *See* Haw. R. App. P. 28(b)(4); *Alvarez Family Trust v. Ass'n of Apartment Owners of Kaanapali Alii*, 121 Hawaiʻi 474, 488, 221 P.3d 452, 466 (2009) ("It is well-established in this jurisdiction that, where a party does not raise specific issues on appeal . . . the issues are deemed waived and need not be considered.").

2. Even if the Circuit Court erred in concluding that the AOAO had ratified the terms of the Conveyance Document, that error would be harmless (Point of Error 5)

The AOAO argues that the Circuit Court erred in concluding in the March 2010 FOF/COL that the AOAO was deemed to have ratified the terms of the Conveyance Document because it unreasonably delayed in bringing a claim for reformation of the Conveyance Document. Reformation is available if (1) there was a valid agreement between the parties expressing their true intentions; (2) the written agreement did not reflect the true intentions of the parties; and (3) this failure to reflect the true intentions was caused by the parties' mutual mistake or a unilateral mistake accompanied by fraud or inequitable conduct by the other party. *See Norwest Bank Minn., N.A. v. Ode*, 615 N.W.2d 91, 95 (Minn. Ct. App. 2000); *see also State v. Kahua Ranch, Ltd.*, 47 Haw. 28, 33, 384 P.2d 581, 585 (1963) (noting the general rule that reformation may be had when the written instrument does not, through a mutual mistake of fact, conform to the intention of the parties to the instrument).

Here, the Circuit Court concluded in COL 19 that the AOAO failed to show "that a prior agreement specifically relating to the post-2014 'additional rent' for the parking stalls was ever made and excluded from the [Conveyance Document] for Unit 3206." As the AOAO did not challenge COL 19, it stands, and the AOAO has not shown reversible error in the Circuit Court's issuance of the related COLs 37-39. *See Amfac, Inc.*, 74 Haw. at 125, 839 P.2d at 31 (unchallenged conclusions of law are treated as binding on appeal).

3. The AOAO is not entitled to statutory lease rent for the Parking Stalls (Point of Error 6)

The AOAO argues that the Circuit Court erred in concluding in COL 41 of the March 2010 FOF/COL that HRS § 514C-22 ("Section 514C-22") did not require the Furuyas to pay lease rent for the Parking Stalls after 2014 upon their failure to acquire the leased fee interest to the Parking Stalls. Section 514C-22 provides:

17

> (c) No condominium unit lessee shall be compelled to purchase the leased fee in such condominium unit and acquired from the lessor by the association of owners, but may instead pay lease rent to the association together with the lessee's share of the common expenses incurred in acquiring the leased fee interest in the condominium units in the project including any debt associated therewith.

HAW. REV. STAT. § 514C-22(c) (Supp. 2012). Neither the statute nor the AOAO's argument, however, suggests that the legislature intended to create a statutory right to lease rent that could, in essence, modify or destroy the agreed-upon contractual rights of the parties. Therefore, we hold that the Circuit Court did not err in rejecting this argument.

B. The Furuyas' cross-appeal[12]/

The Furuyas' first point of error, relating to the Circuit Court's oversight in not making findings of fact and conclusions of law in support of its decision relating to the Partial Dismissal Order, has been resolved by this court's Order for Temporary Remand to the Circuit Court, filed October 25, 2012. We address the remainder of the points below.

1. The DROA for Unit 3206 is not enforceable (Points of Error 2, 6, 7, and 8)

The Furuyas argue in Points of Error 2, 6, 7, and 8 that the Circuit Court erred in concluding that the DROA for Unit 3206 was not an enforceable contract. The Furuyas' contentions pertain to the Partial Dismissal Order, the March 2010 FOF/COL, and the December 2012 FOF/COL, and argue that the Circuit Court erred: in dismissing Counts I and II of the Complaint for breach of the DROA and specific enforcement, and finding and concluding that the DROA for Unit 3206 is not an enforceable contract; in finding that the AOAO offered the Furuyas the opportunity to purchase the leased fee interests associated with Unit 3206 and

---

[12]/ In the January 3, 2013 Order Granting Motion to Supplement Record on Appeal, this court ordered that the Furuyas "may file a supplemental reply brief, *not to exceed 5 pages*, exclusive of indexes, appendices, and statements of related cases." (Emphasis added). In their March 5, 2013 Errata to Supplemental Reply Brief of Plaintiffs-Appellees Only to Re Insert Page Numbers on the Bottom of the Pages Inadvertently Removed During Conversion, the Furuyas submitted a supplemental reply brief that was seven pages in length. In light of the terms of our order, we will not consider pages six and seven of the Furuyas' supplemental reply brief.

the Parking Stalls; in finding that "[a]t first, the Furuyas attempted to purchase the fee interest for 3206 without the parking stalls, however they were unsuccessful in doing so"; and in finding that "the Furuyas attempted to sell their leasehold interest in the 106 stalls to the AOAO, however these attempts also failed."

We hold that the Furuyas have not shown error. In the December 2012 FOF/COL, the Circuit Court justified its ultimate conclusion upon, among other things, the fact that the AOAO had not signed the DROA for Unit 3206 and, thus, had not accepted the Furuyas' "offer" to purchase Unit 3206. The AOAO did not sign the section of the DROA entitled "Acceptance," which states: "The Association agrees to sell the Property to the Buyer or its designee at the price and upon the terms set forth herein, including the Additional Terms attached hereto." The plain language of the DROA for Unit 3206 indicates that Clarence Furuya was making an offer and that the AOAO would ultimately have to accept that offer to create a binding contract. Therefore, the Circuit Court did not err in finding and concluding that the AOAO did not accept the DROA, and that the Furuyas subsequently failed to purchase the leased fee interests associated with Unit 3206 and the Parking Stalls. Likewise, the Circuit Court did not clearly err in finding that the Furuyas unsuccessfully attempted to purchase the fee interest for 3206 without the parking stalls.

The Furuyas present three primary arguments in support of their contention that the Circuit Court erred in concluding that the DROA for Unit 3206 is not binding: (a) the Restated Bylaws required the AOAO to offer the leased fee interest in the land to the unit owner first and the AOAO indicated that it was sending Clarence Furuya a contract; (b) the AOAO admitted in pleadings that it had accepted the DROA for Unit 3206; and (c) in a deposition, AOAO director Foil Craver ("Craver") admitted that a deal had been made and the parties were ready to close.

(a) The Furuyas misinterpret the Restated Bylaws, under which the Board "shall have the powers and duties necessary for the administration of the affairs of the Association and may do all acts and things except such as by law, the Declaration or

these Bylaws may not be delegated to the Board of Directors by the Apartment Owners." One of the Board's powers is "[p]urchasing or leasing or otherwise acquiring in the name of the Board of Directors or its nominee, corporate or otherwise, on behalf of all Apartment Owners, any apartments[.]" Furthermore, the Board is authorized to sell the leased fee interest in the land to the apartment owners or, if the interest remains unsold, to any lessee or other interested third party.

The Furuyas incorrectly contend that Section 2(s)(5) *requires* the AOAO to sell the leased fee interest. The Restated Bylaws specifically provide that the Board has the power to acquire apartment units on behalf of the apartment owners and that there may be situations where the Board would acquire a portion of the lease fee interest to the land on behalf of the AOAO. While Section 2(s)(5) states that the Board has the authority to sell the leased fee interest to the lessee of the apartment unit first, nothing mandates that the AOAO sell the apartment unit at all. Section 2(s)(5) simply establishes the Board's authority to purchase and re-sell the fee interest; it does not require it to do so. Thus, we reject the Furuyas' interpretation of the Restated Bylaws.

Furthermore, the April 23, 1996 Pacific Monarch Fee Purchase document was used to determine whether unit owners intended to purchase their leased fee interest. It specifically states: "This is NOT a contract for the purchase of your leased fee interest." While the document stated that a contract would be sent to the unit owner shortly, it did not state that the contract would be an "offer."

(b) The Furuyas also argue that the AOAO admitted its acceptance of the DROA for Unit 3206 in its answer to the Complaint and had counterclaimed for breach of the DROA. While an admission of fact in a pleading is a binding judicial admission, *Lee v. Puamana Cmty. Ass'n*, 109 Hawaiʻi 561, 573, 128 P.3d 874, 886 (2006), such an argument must be timely raised, *see Dallas Transit Co. v. Young*, 370 S.W.2d 6, 11 (Tex. Civ. App. 1963). Where a party purports to make an admission in its pleadings, the subject of which nevertheless becomes in dispute,

the other party cannot avail itself of that admission on appeal if it did not first seek to do so below. *See id.* Indeed, a trial court cannot be expected to independently recognize the significance of any particular paragraph in the case pleadings; it must at times rely on the parties.

Despite the admission, the AOAO did not treat the issue of offer and acceptance of the DROA for Unit 3206 as settled, and the Furuyas did not argue that it was settled pursuant to a judicial admission. In its June 1, 2009 trial brief, in fact, the AOAO specifically argued that the DROA for Unit 3206 was not enforceable because it was never accepted by the AOAO. Similarly, the Furuyas' trial brief failed to raise the issue. When the AOAO moved for dismissal on June 24, 2009, the Furuyas did not contend that the AOAO had already admitted acceptance of the DROA. Rather, the parties contested the issue of offer and acceptance on the evidence, not on the pleadings. Having failed to assert an argument premised on a judicial admission before the trial court, the Furuyas have waived the opportunity to do so here. *Arquette v. State*, 128 Hawai'i 423, 442 n.24, 290 P.3d 493, 512 n.24 (2012) (an argument not raised at trial is waived on appeal).

(c) Finally, in light of the plain language of the DROA, the lack of the AOAO's countersignature is substantial evidence that the AOAO had not accepted the DROA. Craver's deposition testimony that "they had made the deal" does not demonstrate error.

Therefore, the Furuyas have failed to show that the Circuit Court erred in finding and concluding that there was no enforceable contract for the purchase of Unit 3206.

2. The Circuit Court did not err as to the claims for injunctive relief, declaratory relief and a declaration of ultra vires actions (Points of Error 3, 5, 6, 9, and 10)

The Furuyas argue that if the DROA was unenforceable, the AOAO had failed to offer the leased fee interest to the Furuyas as it was required to under the Restated Bylaws; the AOAO could not have refused to close on the sale of the leased fee

interest for Unit 3206 based on the "best interests of the association"; and the Restated Bylaws prohibited the AOAO from retaining the leased fee interest because it was not an "interested Lessee" in the association or "other interested third party."

The Furuyas' arguments arise from several documents. The issues raised relating to the Partial Dismissal Order and the subsequent December 2012 FOF/COL involve: the Circuit Court's dismissal of Counts IV and IX of the Complaint, relating to injunctive relief and alleged *ultra vires* actions; its conclusion that the Board of Directors acted within its authority; its partial dismissal of Count V, the Furuyas' claim for declaratory relief, and its finding, concluding, and declaring that the AOAO was entitled to retain possession and ownership of the leased fee interests in Unit 3206 and the Parking Stalls.

Other arguments relate to the Circuit Court's finding in the March 2010 FOF/COL and the December 2012 FOF/COL that the AOAO offered the Furuyas the opportunity to purchase the leased fee interests associated with Unit 3206 and the Parking Stalls, and the Circuit Court's "declaring," in the March 2010 FOF/COL, that the AOAO was the rightful owner of the leased fee interests that were not purchased by the Furuyas. The Furuyas also challenge the April 6, 2010 Judgment, contending that the Circuit Court erred by declaring that the AOAO is the legal and beneficial owner of the leased fee interests to Unit 3206 and the Parking Stalls and that it "is not legally or morally obligated to sell the leased fee interests to the Apartment Unit 3206 and the 106 Parking Stalls to Plaintiffs."

As to all of these arguments, for the same reason that we have concluded that the DROA is unenforceable, the Circuit Court's findings that the AOAO made an offer to the Furuyas for the purchase of Unit 3206 are clearly erroneous. However, as stated above, *see supra* Part III.B.1.a, we reject the Furuyas' premise that the Restated Bylaws *required* the AOAO to offer, or to not retain, the leased fee interest. Accordingly, their arguments fail. The Circuit Court thus did not err in dismissing the Furuyas' injunctive relief, declaratory relief, and *ultra*

*vires* claims, finding that the AOAO offered the Furuyas the opportunity to purchase the leased fee interests associated with Unit 3206 and the Parking Stalls, and concluding that the AOAO was entitled to retain possession and ownership of the leased fee interests in Unit 3206 and the Parking Stalls.

> 3.  The Circuit Court did not err in dismissing the Furuyas' promissory-estoppel claim (Point of Error 4)

The Furuyas contend that the Circuit Court erred by dismissing the promissory and equitable estoppel claims in the Complaint in the Partial Dismissal Order, and finding and concluding that the Furuyas' reliance on the AOAO's promises, assurances, or actions was not reasonable. The Furuyas also contend that the Circuit Court erred in finding in the December 2012 FOF/COL that the AOAO was not obligated to close the sale on Unit 3206.[13]/

The Furuyas argue that "[e]ven if somehow the DROA is not enforceable, the doctrine of [promissory] estoppel should be applied." The Circuit Court disagreed, dismissing the Furuyas' claim on the grounds that any reliance on the part of the Furuyas was unreasonable. We agree that there was no reasonable reliance by the Furuyas on any promise by the AOAO, and that no claim for promissory estoppel lies.

The elements of promissory estoppel, as distilled from the RESTATEMENT (SECOND) OF CONTRACTS § 90 (1981), are:

> (1) There must be a promise;
>
> (2) The promisor must, at the time he or she made the promise, foresee that the promisee would rely upon the promise (foreseeability);
>
> (3) The promisee does in fact rely upon the promisor's promise; and
>
> (4) Enforcement of the promise is necessary to avoid injustice.

*Gonsalves v. Nissan Motor Corp. in Haw.*, 100 Hawaiʻi 149, 164–65, 58 P.3d 1196, 1211–12 (2002) (quoting *In re Herrick*, 82 Hawaiʻi

---

[13]/    The Furuyas note that this latter claim is "[e]ssentially the same as POE #4 at p. 9 of OB." Thus, we do not address it separately.

329, 337-38, 922 P.2d 942, 950-51 (1996) ("Section 90 can be reduced to [these] elements . . . .")). If a promisee's reliance is unreasonable, however, then a trial court can fairly conclude that the refusal to enforce the promise will not lead to injustice. RESTATEMENT (SECOND) OF CONTRACTS § 90 cmt. b.

Despite conflicting evidence and testimony as to which party first backed out of the sale of the leased fee interest to Unit 3206 and the appurtenant Parking Stalls, the Circuit Court, in its December 2012 FOF/COL, found that it was the Furuyas that had done so. Relying in part on that basis, the Circuit Court denied the Furuyas' promissory-estoppel claim because the court concluded that the Furuyas' alleged reliance on any promise by the AOAO that it would sell the fee interest was unreasonable; therefore, it did not address the other elements of promissory-estoppel.[14] The Circuit Court stated that any reliance by the Furuyas was unreasonable because the Furuyas (a) "voluntarily decided not to purchase the leased fee interest to the Parking Stalls," (b) "voluntarily failed and refused to fund the escrow account," and (c) "voluntarily offered to sell the parking stalls to the AOAO[.]"

We agree. The Circuit Court's justifications support its conclusion that any reliance was unreasonable. To the extent the Furuyas acted in reliance on either the DROA or any AOAO statements regarding the leased fee conversion process, we fail to see how their decision to forego the purchase reflects a reasonable reliance such that promissory estoppel is available as a matter of law. *See Ravelo by Ravelo v. Hawaii Cnty.*, 66 Haw. 194, 199, 658 P.2d 883, 887 (1983) (plaintiffs exhibited reliance on promise of police employment through the quitting of their jobs and moving to the island of Hawai'i); *Morgado v. Hamada*, No. 29026, 2009 WL 1071218, at *1 n.3 (Haw. App. Apr. 22, 2009) (SDO) (phone calls from prospective high school coaching hire to members of coaching staff did not show reliance upon conditional offer of employment).

---

[14] We express no opinion on whether the other elements of promissory estoppel have been satisfied.

Therefore, the Circuit Court did not err in dismissing Count VI of the Complaint, and we affirm that portion of the Judgment.

4.    Points relating to two laundry parking stalls

The Furuyas argue that they established their claims for conversion and unjust enrichment relating to two laundry parking stalls but that the Circuit Court "improperly applied affirmative defenses."

a.    The Furuyas' waiver argument is, itself, waived (Point of Error 11)

The Furuyas contend that the Circuit Court erred in finding that they had waived their claim for conversion or were otherwise barred by the statute of limitations.  In support, the Furuyas cite to a statute defining the term "limited common element" and the case of *Penney v. Ass'n of Apartment Owners of Hale Kaanapali*, 70 Haw. 469, 776 P.2d 393 (1989).  Although they characterize the instant case as a "reverse *Penney*" case, they do so without explaining how *Penney*, or its purported reverse holding, pertains to waiver.  As the Furuyas do not present any discernable argument on the issue of waiver, we deem the issue to be waived.  Haw. R. App. P. 28(b)(7).

b.    The Circuit Court abused its discretion in applying estoppel by acquiescence to the Furuyas' claims regarding the AOAO's future use of the laundry-related parking stalls (Points of Error 12, 13, 14, 15, 16, and 17)

The Furuyas' Points of Error 12 through 17 all arise from the March 2010 FOF/COL and the December 2012 FOF/COL.  The arguments challenge: the Circuit Court's identification of two parking stalls used in connection with laundry services; its finding and conclusion that the two parking stalls "were assigned and that the stalls created the laundry"; its finding that the Furuyas acquired the two laundry-related stalls "subject to their known, obvious, and accepted use by the AOAO without compensation"; and its finding that the Furuyas assented to the use of the two parking stalls through their inaction.  Other

issues raised pertain to the Circuit Court's conclusion that the Furuyas acquiesced or consented to the use of the two laundry-related parking stalls, its statement of the elements of the affirmative defense of estoppel by acquiescence, and its conclusion that the Furuyas are estopped from asserting a claim and seeking damages for the past and future use of the two laundry-related parking stalls.

Ordinarily, the March 2010 FOF/COL's findings of fact are reviewed for clear error, and its conclusions of law are reviewed under the right/wrong standard. *Kewalo Ocean Activities*, 124 Hawai'i at 317, 243 P.3d at 277. However, when reviewing trial courts sitting in equity, appellate courts grant considerable deference. *See Leaver v. Grose*, 610 P.2d 1262, 1263-64 (Utah 1980) ("[U]nder ordinary circumstances, a reviewing court will grant considerable deference to a trial court sitting in equity, reversing its disposition of the case only in the presence of manifest injustice.")

The Furuyas argue that the Circuit Court erroneously found that the Furuyas' claim for unjust enrichment "was barred by the affirmative defense of equitable estoppel." In the March 2010 FOF/COL, the Circuit Court rejected the Furuyas' unjust-enrichment claim relating to the two laundry parking stalls on the grounds that the Furuyas were "estopped from asserting a claim and seeking damages for the past and future use of the two parking stalls" because "[f]or more than 20 years, the [Furuyas] have known about and permitted the open and obvious use of the 2 stalls for the laundry facilities [and] [t]he AOAO has reasonably relied to its detriment on the use of these two stalls in support of its laundry operation." Specifically, the Circuit Court relied on a theory of "estoppel by acquiescence."

"Hawai'i recognizes the theory of quasi-estoppel, which is a species of equitable estoppel which has its basis in election, waiver, acquiescence, or even acceptance of benefits and which precludes a party from asserting to another's disadvantage, a right inconsistent with a position previously taken by the party." *Cvitanovich-Dubie v. Dubie*, 123 Hawai'i 266, 276, 231 P.3d 983, 993 (App. 2010) (quoting *Anderson v.*

*Anderson*, 59 Haw. 575, 589, 585 P.2d 938, 947 (1978)) (brackets and internal quotation marks omitted). "No concealment or misrepresentation of existing facts on the one side, no ignorance on the other, are necessary ingredients." *Hartmann v. Bertelmann*, 39 Haw. 619, 628 (Haw. Terr. 1952) (quoting *Montclair Trust Co. v. Russell Co.*, 39 A.2d 641, 643 (N.J. Ch. 1944)). Furthermore, "[u]nlike equitable estoppel, an estoppel by acquiescence does not require a showing of detrimental reliance or prejudice." 31 C.J.S. *Estoppel and Waiver* § 175 (2008). In essence, quasi-estoppel may apply when a trial court finds that a party's conduct "was so inconsistent with her present claim that, in equity, [that party] should be estopped to make such a claim." *See Anderson*, 59 Haw. at 590, 585 P.2d at 947.

Here, the Circuit Court found that as of July 1985, Clarence Furuya knew or should have known that two of the Parking Stalls were being used for the laundry facility and that he was not receiving compensation for this use. The Circuit Court also found that the Furuyas did not object to such use until the filing of this lawsuit. Furthermore, the Furuyas paid the additional rent associated with those stalls without complaint; i.e., an affirmative act. Given the deference appellate courts give to trial courts sitting in equity, *see, e.g.*, *Leaver*, 610 P.2d at 1263-64, the Circuit Court did not abuse its discretion in applying estoppel by acquiescence to the Furuyas' claims regarding the AOAO's use of the laundry-related parking stalls before filing of the Complaint.

While the Furuyas are estopped by acquiescence from making unjust-enrichment claims for *past* benefits received by the AOAO from the laundry-related parking stalls before filing of the Complaint, they are not precluded from actions or barred from recovery on claims regarding the use of the stalls after filing of the Complaint. With the filing of this lawsuit, the Furuyas have now objected, and no longer acquiesce, to the AOAO's use of the laundry-related parking stalls. Accordingly, estoppel by acquiescence does not apply to the Furuyas' claims for unjust enrichment regarding the use of the laundry-related parking stalls after the filing of the Complaint. *See, e.g.*, *Maui*

*Aggregates, Inc. v. Reeder*, 50 Haw. 608, 610, 446 P.2d 174, 176 ("The basis of recovery on quantum meruit is that a party has received a benefit from another which it is unjust for him to retain without paying therefor."); *Durette v. Aloha Plastic Recycling, Inc.*, 105 Hawaiʻi 490, 502, 100 P.3d 60, 72 (2004) ("One who receives a benefit is of course enriched, and he would be unjustly enriched if its retention would be unjust." (citing RESTATEMENT OF RESTITUTION § 1 cmt. a (1937) (emphasis removed)). We conclude that the Circuit Court abused its discretion in estopping the Furuyas from asserting a claim and seeking damages for the use of the two laundry-related parking stalls after filing of the Complaint, and remand for further proceedings.

> 5. The identity of the prevailing party is settled (Points of Error 19 and 20)

The Furuyas contend that the Circuit Court erred in granting attorneys' fees and costs to the AOAO and denying attorneys' fees and costs to the Furuyas. In general, "a prevailing party is a party who has prevailed on the disputed main issue, even though not to the extent of the party's original contention." *Queen Emma Found. v. Tatibouet*, 123 Hawaiʻi 500, 511, 236 P.3d 1236, 1247 (App. 2010) (quoting *Food Pantry, Ltd. v. Waikiki Bus. Plaza, Inc.*, 58 Haw. 606, 620, 575 P.2d 869, 879 (1978)) (brackets and internal quotation marks omitted); *Tradewinds Hotel, Inc. v. Cocharn*, 8 Haw. App. 256, 269, 799 P.2d 60, 68 (1990).

Here, the disputed main issues in the case related to the parties' claims to be entitled to own the leased fee interest to Unit 3206, which includes the appurtenant Parking Stalls. We have vacated the March 2010 FOF/COL only as it pertains to the Furuyas' claim for unjust enrichment from the use of the laundry-related parking stalls after filing of the Complaint. As we have otherwise affirmed, declaring that the AOAO has no obligation to sell the leased fee interest in Unit 3206 (and the Parking Stalls), the prevailing party is a settled matter. Accordingly, we affirm the Circuit Court's granting of attorneys' fees and

costs to the AOAO and denial of attorneys' fees and costs to the Furuyas.

IV.   Conclusion

We, therefore, vacate the portion of the March 2, 2010 Findings of Fact, Conclusions of Law and Order related to the Circuit Court's findings and conclusions that the Furuyas were estopped by acquiescence with regard to the AOAO's use of the laundry-related parking stalls after filing of the Complaint.  We otherwise affirm.  We remand for further proceedings consistent with this opinion.

DATED:   Honolulu, Hawaiʻi, April 25, 2014.

On the briefs:

George W. Van Buren,
Robert G. Campbell, and
John B. Shimizu
(Van Buren Campbell & Shimizu)
for Plaintiffs-Appellees/
Cross-Appellants, Counterclaim-
Defendants-Appellees/Cross-
Appellants Clarence O. Furuya
and Lona Lum Furuya

Matt A. Tsukazaki
(Li & Tsukazaki)
for Defendant-Appellants/
Cross-Appellees, Counterclaim
Plaintiff-Appellant/Cross-
Appellee Association of
Apartment Owners of Pacific
Monarch, Inc.

*Lawrence M. Reifurth*
Associate Judge

*[signature]*
Associate Judge

29